(91 South. 438)

No. 24735.

### BRUSLE et al. v. DUNLAP ELECTRIC CO.

(March 27, 1922. Rehearing Denied April 17, 1922.)

*(Syllabus by Editorial Staff.)*

1. Corporations ⬳553(6)—President's use of moneys for benefit of another corporation held irregular and unauthorized.

The act of the president of an electric light and power company in withdrawing money from its bank deposit and using it for the benefit of another corporation was irregular and unauthorized, though the books of the electric company showed an account in his favor, where the amount thereof was insufficient to cover the amount withdrawn, and the withdrawals were not charged to that account, and his account showed no balance in his favor at the time he began using the money for the benefit of the other corporation.

2. Corporations ⬳553(6) — That president held corporation's notes did not justify his use of its money.

That the president of an electric light and power company had taken its notes, secured by a mortgage, for an indebtedness, did not justify his act in using its money for the benefit of another corporation, of which he was president, especially where it was negotiable, and had been transferred as collateral for a loan.

3. Corporations ⬳553(6)—Receiver appointed, where president was using funds for benefit of another corporation.

Where the president of an electric light and power company was using its money irregularly and without authority to defray the expenses of a plantation owned by another corporation, of which he was president, a receiver should be appointed, and where he owned a majority of the stock, and was in a position to elect his own board of directors, and through them the president, such appointment should not be denied because of the court's power to suspend him, under Act No. 267 of 1914, § 18(c).

Appeal from Twenty-First Judicial District Court, Parish of Iberville; C. K. Schwing, Judge.

Suit by Charles A. Brusle and others against the Dunlap Electric Company. From a judgment appointing a receiver, defendant appeals. Affirmed.

George Seth Guion and Guion & Lambremont, all of New Orleans, for appellant.

J. H. Pugh, of Plaquemine, for appellees.

By Division A, composed of Chief Justice PROVOSTY and Justices OVERTON and LECHE.

OVERTON, J. Under the provisions of section 1 of Act 159 of 1898, plaintiffs, as stockholders of the Dunlap Electric Company, have instituted this suit for the purpose of having a receiver appointed for that company. The basis of the application is that Dunlap, as the president of the company, is jeopardizing the rights of its stockholders by grossly mismanaging its business and by committing acts ultra vires of the corporation.

The Dunlap Electric Company was organized, as appears from its charter, for the purpose of furnishing electricity for light, power, heat, and the like, to the general public, and to municipalities and to that end to own, construct, lease, and operate electric plants; to acquire, construct, and operate street railways, in the town of Plaquemine or elsewhere in the state; to construct, lease, purchase, and operate plants and works to supply municipalities and the inhabitants thereof with gas and water for all purposes; and in furtherance of the above objects, and those incidental thereto, to acquire, hold, and dispose of stocks, bonds, and other evidences of indebtedness of plants of the above description.

Of the various acts specified and alleged, as justifying the appointment of a receiver, it is necessary to inquire into only one of them. That one is the misapplication and misuse of the funds of the corporation.

It appears that Dunlap was a stockholder in and president of the J. McWilliams Planting Company. This company owned and operated a plantation, in the parish of St. Landry, known as the "Australia plantation." While this plantation was under seizure, Dunlap used the money of the Dunlap Electric Company to the amount of $7,270.11 to operate it. He obtained this money by drawing checks of that company, as its president, against deposits of the company in the People's Bank of Plaquemine, of which he was also president, or else had the secretary draw them. The amounts thus drawn, and aggregating the above sum, were entered on the books of the company, and appear as items for "cash loans for pay roll," and for various other expenses of the Australia plantation, and date from February 26, 1921, to April 21 of the same year. This account appears on the books as being against the J. McWilliams Planting Company, the owner of the plantation. It shows a credit of $234.30.

[1] Dunlap seeks to explain his action by saying that he made deposits with the Dunlap Electric Company, that this company was indebted to him, and that he was only using his own money. He further states, in the course of his evidence, that he made no bank deposits in his own name, but deposited all of the money he made in the name of the company, in the Iberville Bank & Trust Company, a bank different from the one of which he was president, and against which the checks above mentioned were drawn. His explanation that he was using his own money is not satisfactory. It does, however, appear that he had an account against the company on its books, showing credits in his favor aggregating $6,685.15, dating from March 12, 1921, to April 19th of the same year, against which there are debits, amounting to $2,181.18, dating from January 8th to April

21st of that year, and leaving a balance in his favor, on this account, of $4,503.97. However, he has had the amount that he obtained from the company for the Australia plantation charged to the corporation owning that plantation, and it therefore remains, notwithstanding the credit balance on his personal account, an indebtedness against that corporation; but, could that balance be allowed as a credit against that indebtedness, it would still leave him indebted to the company in the sum of $2,531.84. An examination of the two accounts shows that, when he began using the company's money for the plantation, his personal account showed no balance in his favor, but, to the contrary, an indebtedness, and did not show a balance until some days later.

[2] The above is not explained away by the further fact that the company, several years before, made a note for $20,000, in favor of Dunlap, secured by mortgage on the plant, for an indebtedness, which he says amounted at the time to about $15,000, but which, he states, has since been increased to $19,000 or $20,000. That note is negotiable, and has been transferred, we gather from the evidence, as collateral to a loan he secured for some $15,000. Besides this, the existence of that note does not justify his action.

[3] The important fact deducible from the above is that Dunlap is withdrawing, irregularly and without authority, the money of the company to defray the expenses of a plantation owned by a corporation which is in financial distress, of which he is also president, and having it charged to that corporation. He may or may not be able to pay the money back, and the same may be said of the plantation, though the money seems to have been advanced to the sheriff to operate it during the seizure. The stockholders of the company are not called upon to take such chances, and submit to the company's money being diverted from the purposes for which the company was organized, nor to submit to their interests being thus endangered.

Counsel say that a receiver should not be appointed, in the event we should rule as we have, for the reason that a receiver should not be ordered except when it appears necessary, and besides one may be avoided in this instance by the suspension of Dunlap from office.

The surrounding facts in the record impress us that, in order to protect the rights of the stockholders, a receiver is necessary. The learned judge below, after hearing the evidence, reached the same conclusion, and we think correctly. The appointment, in this instance, cannot be escaped by suspending Dunlap from the discharge of the duties of his office, at the instance of stockholders, in a suit for that purpose. It is true that the courts are given jurisdiction to suspend an officer or director, who has abused his trust. Section 18(c) of Act 267 of 1914. However, in this instance, the remedy would not be effective, for the reason that Dunlap owns a majority of the stock, and therefore is in position to elect his own board of directors, and through them the president.

For the reasons assigned, the judgment appealed from is affirmed; appellant to pay the costs.

Rehearing refused by Division B, composed of Justices O'NIELL, LAND, and BAKER.